UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TECO GUATEMALA HOLDINGS, LLC,

*Petitioner*,

v.

REPUBLIC OF GUATEMALA,

*Respondent*.

Civil Action No. 17-102 (RDM)

## MEMORANDUM OPINION AND ORDER

Petitioner TECO Guatemala Holdings, LLC ("TECO") commenced this action by filing a petition to confirm an arbitral award rendered by the International Centre for Settlement of Investment Disputes ("ICSID") against the Republic of Guatemala ("Guatemala"). Dkt. 1. Although all agree that the role of a federal court asked to confirm an ICSID award is limited, Guatemala requests that the Court dismiss TECO's petition for failure to state a claim. Dkt. 23. Guatemala maintains, in short, that ICSID annulled the arbitral award and that, as a result, there is nothing for this Court to confirm. TECO, unsurprisingly, disagrees and submits that the arbitral award that it seeks to enforce is alive and well. Dkt. 26. As explained below, TECO has the better argument and, accordingly, the Court will **DENY** Guatemala's motion to dismiss TECO's petition, Dkt. 23.

### I. BACKGROUND

**A.    ICSID Structure and Enforcement**

In the 1960s, the World Bank "spearheaded" an effort to develop a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017)

(citing Anthony R. Parra, *The History of ICSID* 11–12, 24–26 (Oxford 2012)). The product of that effort was the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention"), Mar. 18, 1965, 17 U.S.T. 1270, a multilateral treaty designed "to promote economic development and private international investment by providing a legal framework . . . to resolve . . . disputes between private investors and governments." *Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 44 (D.D.C. 2015). Most significantly for present purposes, the ICSID Convention established the International Centre for Settlement of Investment Disputes—or "ICSID," as it is commonly known—which has the authority to convene arbitration panels "to adjudicate disputes between international investors and host governments in 'Contracting States.'" *Mobil Cerro Negro, Ltd.*, 863 F.3d at 101. The United States is a signatory to the ICSID Convention, *see* Int'l Ctr. for Settlement of Inv. Disputes, *List of Contracting States and Other Signatories of the Convention* (last visited Sept. 29, 2018), and Congress has enacted implementing legislation, *see* Convention on the Settlement of Investment Disputes Act of 1966, Pub. L. 89–532, 80 Stat. 334 (1966) (codified at 22 U.S.C. §§ 1650 and 1650a).

The ICSID Convention provides an international framework for adjudicating and enforcing investor-state disputes. First, "[a]ny Contracting State or any national of a Contracting State" may request that ICSID convene an arbitration tribunal. *See* ICSID Convention art. 36. The tribunal, consisting of either a single arbitrator or "any uneven number of arbitrators," *id.* art. 37, considers the dispute and issues a written award, which "deal[s] with every question submitted to the [t]ribunal, and state[s] the reasons upon which it is based," *id.* art. 48. If either party contests the tribunal's award, it may request "revision" if there is a newly-discovered material fact previously unknown to the parties and arbitrator, *see id.* art. 51, or "annulment" if a

party challenges the tribunal's substantive decision, *id.* art. 52. When a party seeks annulment, ICSID convenes an *ad hoc* committee of three members, which is authorized "to annul the award or any part thereof." *Id.* At a party's request, enforcement of an award is "stayed provisionally until the [c]ommittee" renders its decision. *Id.* But, "[e]xcept to the extent that enforcement" has been stayed, the tribunal's award remains "binding on the parties and shall not be subject to any appeal or to any other remedy" other than those set forth in the ICSID Convention. *Id.* art. 53. Following an annulment, either partial or full, either party may request resubmission of the dispute to a new tribunal—although if an award had been annulled only in part, the new tribunal is prohibited from reconsidering any non-annulled portion of the award. *Id.* r. 55. As Guatemala acknowledges, "[p]artially annulled awards can be enforced." Dkt. 23-1 at 22.

ICSID is not empowered to enforce awards. Instead, prevailing parties must register their awards with a court of a member state. The courts of member states are required to "recognize an award . . . as binding and [to] enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that [s]tate," or, for a member state with "a federal constitution," to "treat the award as if it were a final judgment of the courts of a constituent state." *Id* art. 54. A member state is "not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award;" all it may do is "examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro Negro, Ltd.*, 863 F.3d at 102. Consistent with this obligation, the U.S. implementing legislation confers exclusive jurisdiction on the federal district courts to enter awards, *see* 22 U.S.C. § 1650a(b), and provides that an ICSID arbitration award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

3

B.   **Guatemala and TECO's Dispute**

The ICSID arbitration at issue in this case involves a dispute between TECO Guatemala Holdings, LLC (hereinafter "TECO"), an energy company incorporated in the United States, and the Republic of Guatemala. Dkt. 1 at 2 (Pet. ¶ 2). In 1997, Guatemala announced a plan to privatize Empresa Eléctrica de Guatemala, S.A. ("EEGSA"), the largest electricity distribution company in the country. *Id.* at 4 (Pet. ¶ 9). A consortium of energy companies, including TPS de Ultramar Guatemala, S.A. ("TPS"), a subsidiary of TECO Energy, created an investment company that acquired a controlling interest in EEGSA in July 1998. *Id.* (Pet. ¶ 10). TPS held a "21 percent" share of the consortium, and from 1998 until the sale of the consortium in 2010, the consortium maintained "an approximate 81 percent controlling interest in EEGSA." *Id.* (Pet. ¶ 10). In 2005, TPS's shares in the consortium were transferred to TECO. *Id.* (Pet. ¶ 11).

The arbitration between TECO and Guatemala concerned the electricity rates paid to EEGSA and other distribution companies. Among other components, the applicable rates incorporated a Value Added for Distribution—or "VAD"—which was intended to compensate the distributors for operating expenses and infrastructure and to provide a fair return on investment. *Id.* (Pet. ¶ 12). The VAD was recalculated every five years by a Guatemalan regulatory agency, the National Electric Energy Commission ("CNEE"), which published the electricity rates for EEGSA and other electricity distributors in accordance with Guatemalan law. *Id.* According to TECO, the process by which NCEE set the VAD for the 2008–2013 tariff period was unlawful in multiple respects and, as a result, violated Guatemala's obligation under Article 10.5 of the Dominican Republic-Central America Free Trade Agreement ("DR-

CAFTA"), 43 I.L.M. 514 (2004), "to afford protected investments fair and equitable treatment."[1] *Id.* at 5 (Pet. ¶ 14). CNEE's actions resulted in "cash flow losses" for TECO and, according to TECO, ultimately led to the sale of the company "at a depreciated value" in 2010. *Id.* at 5 (Pet. ¶¶ 13–14). Pursuant to Articles 10.15 and 10.16 of the DR-CAFTA, TECO filed a claim in arbitration against Guatemala in October 2010. *Id.* at 5–6 (Pet. ¶¶ 15–16). That proceeding was governed by the ICSID Convention and the ICSID Rules and Procedures for Arbitration Proceedings. *Id.* at 5 (Pet. ¶ 15).

C.      **Procedural History before the ICSID**

In the DR-CAFTA arbitration, TECO sought damages in the amount of $243,585,335. *Id.* at 6 (Pet. ¶ 17). That total was the sum of two distinct claims for relief:

*First*, TECO sought $21,100,552 to compensate it for the "portion of the cash flow EEGSA lost from August 1, 2008, when the VAD took effect, until October 21, 2010, when [TECO] sold its ownership interest in EEGSA." *Id.* (Pet. ¶ 17). That amount, according to TECO, was necessary to compensate it for the revenue that it would have received during the relevant period had Guatemala not understated the VAD. TECO refers to this claim as its "historical loss" or "cash flow value" claim.

*Second*, TECO sought $222,484,783 to compensate it for "the damages [it] suffered . . . as a result of the impaired value at which [TECO] sold its ownership interest in EEGSA." *Id.* at 7 (Pet. ¶ 17). This amount, according to TECO, was necessary to compensate it for the depreciated market value of the consortium, and thus the depreciated market value of TECO's

---

[1] As with the ICSID Convention, the United States is party to DR-CAFTA. *See* 19 U.S.C. § 4001 *et seq.*

share, resulting from the understated VAD. TECO refers to this claim as its "loss of value" claim. *Id.* (Pet. ¶ 17).

On December 19, 2013, the ICSID arbitration Tribunal found that Guatemala had violated the DR-CAFTA. *See id.* (Pet. ¶¶ 18–19); *see also* Dkt. 1-2 at 3 (Arb. Award). TECO's success on its damage claims, however, was mixed. The Tribunal found the TECO had presented sufficient evidence to establish an "historical loss" of $21,100,552. Dkt. 1-2 at 146 (Arb. Award ¶ 742). As the Tribunal explained, the evidence showed that TECO was entitled to its "share of the higher revenues that EEGSA would have received had the CNEE observed due process in the tariff review," which was calculated "from the moment the high revenues would have been first received until the moment when [TECO] sold its share in EEGSA." *Id.* But the Tribunal was not persuaded that TECO had offered evidence sufficient to prevail on its "loss of value" claim for $222,484,783. *Id*. at 146–47 (Arb. Award ¶¶ 744–749). As to that claim, the Tribunal found that there was not "sufficient evidence of the existence and quantum of the losses that were allegedly suffered as a consequence of the sale" of the consortium at a depreciated price. *Id*. at 147 (Arb. Award ¶ 749).

The final paragraph of the Tribunal's decision reads as follows:

The Arbitral Tribunal decides:

    A.    That it has jurisdiction to decide on Teco's claims under the CAFTA-DR;

    B.    That Guatemala has violated its obligation to accord to Teco's investment Fair and Equitable Treatment under Article 10.5 of the CAFTA-DR;

    C.    That Guatemala shall pay US$21,100,552 to Teco as damages;

    D.    That the amount mentioned in section C above will bear interest at the US Prime rate plus a 2 percent premium as from October 21, 2010 until the date of full payment;

E. That interest shall be compounded on an annual basis;

F. That Guatemala shall support the entirety of its costs and expenses and pay US$ [sic] US$7,520,695.39 to Teco on account of its legal costs and expenses; [and]

G. That all any other claims and pleas for relief are rejected.

*Id.* at 153 (Arb. Award ¶ 780).

On April 18, 2014, TECO filed an application with ICSID to annul the Tribunal's award in part, and, that same day, Guatemala filed a petition seeking to annul the award in full. Dkt. 1 at 7 (Pet. ¶ 20). TECO sought to annul the award only to the extent that it denied the company's "loss of value" claim, denied its request for interest on its "historical losses" claim for the period from August 1, 2009 until October 21, 2010, and denied its "claimed interest rate applicable to pre-award interest." *Id.* (Pet. ¶ 20). Guatemala, on the other hand, sought to annul the Tribunal's award in its entirety. *Id.* (Pet. ¶ 20).

In response, ICSID convened an *ad hoc* Committee to consider the annulment requests. Dkt. 1 at 7 (Pet. ¶ 21); *see also* Dkt. 1-3 at 3 (Annul. Award). The Committee rejected each of Guatemala's challenges to the Tribunal's finding that it had violated the DR-CAFTA. *See* Dkt. 1-3 at 88–95 (Annul. Award ¶¶ 274–300); *id.* at 98–103 (Annul. Award ¶¶ 308–323); *id.* at 104–106 (Annul. Award ¶¶ 327–331). The Committee also rejected "Guatemala's argument that the [T]ribunal failed to provide reasons and contradicted itself within its decision on damages for historical losses," *id.* at 109 (Annul. Award ¶ 343), and, accordingly, opined that "annulment of the Award . . . is not warranted," *id.* at 108 (Annul. Award ¶ 337). In contrast, the Committee was persuaded by TECO's contention that the Tribunal's "decision on the [company's] loss of value claim [did] not meet the standards" required by the ICSID convention, *id.* at 42 (Annul. Award ¶ 127), because "the Tribunal's reasoning . . . [was] not clear at all," *id.* (Annul. Award

7

¶ 128). It, accordingly, decided that the Tribunal's decision on TECO's "loss of value claim . . . need[ed] to be annulled." *Id.* (Annul. Award ¶ 127). The Committee also concluded that the Tribunal erred in declining to award TECO "interest on historical damages for the period before EEGSA's sale." *Id.* at 63 (Annul. Award ¶ 198).

The final paragraph of the Committee's decision reads, in relevant respects, as follows:

For the reasons set out of above, the Committee decides as follows:

(1) Pursuant to Article 52(1)(e) of the ICSID Convention, decides to annul the Award's decision on damages for the loss of value claim, as reflected in paragraphs C and G of the *dispositif* of the Award . . . and the corresponding paragraphs in the body of the Award related to damages (paragraphs 743–761);

(2) Pursuant to Article 52(1)(d) of the ICSID Convention, decides to annul the Award's decision on interest on historical damages for the period 1 August 2009 until 21 October 2010, as reflected in paragraphs D and G of the *dispositif* of the Award and the corresponding paragraphs in the body of the Award related to damages (paragraphs 765, 768);

(3) As a result of the above annulment, decides to annul the Award's decision on costs, as reflected in paragraph F of the *dispositif* of the Award and the corresponding paragraphs in the body of the Award related to costs (paragraphs 769–779);

(4) Dismisses the other grounds of TECO's Application for the Partial Annulment of the Award . . . ;

(5) Dismisses the other grounds of Guatemala's Application for the Annulment of the Award . . .;

. . . .

(10) Notes that the stay of enforcement of the Award terminates automatically as of the date of this Decision pursuant to Arbitration Rule 54(3); [and]

(11) Dismisses all other claims.

Dkt. 1-3 at 120–21 (Annul. Award ¶ 382).

On January 16, 2017, TECO initiated this action, seeking to "confirm and recognize" the "Final Award" and the entry of judgment against Guatemala "in the amounts stated in the Award and the Annulment decision." Dkt. 1 at 9 (Pet. ¶ 27). TECO alleges, in particular, that it "is entitled to damages in the amount of . . . $21,100,552 [for its historical loss], plus interest on that amount at the US Prime rate plus two percent as from October 21, 2010 until the date of full payment, compounded annually." *Id.* (Pet. ¶ 28). TECO also seeks entry of judgment awarding it costs as stated in the annulment decision. *Id.* (Pet. ¶ 29).

Guatemala has now filed a motion to dismiss TECO's petition pursuant to Fed. R. Civ. Proc. 12(b)(6).[2]

## II. ANALYSIS

**A.     Threshold Issues**

Before addressing the merits of Guatemala's motion, the Court must confront several threshold issues. As explained above, the ICSID Convention requires that the United States "recognize an award" and "enforce the pecuniary obligations imposed by that award." ICSID Convention art. 54. The "Convention does not obligate its contracting states," however, "to adopt any specific method for fulfilling those obligations." *Micula*, 104 F. Supp. 3d at 52. U.S. Courts have, as a result, endeavored to define whether a party with an ICSID award may register the award through a summary proceeding, such as an *ex parte* petition, or must instead initiate a plenary action against the foreign sovereign, which, among other things, "would require service on the foreign government" in compliance with the Foreign Sovereign Immunities Act. *Id.* at 49;

---

[2] After the parties completed briefing on Guatemala's motion, TECO filed a motion for leave to file a sur-reply, Dkt. 28, which Guatemala opposed, Dkt. 29. Because the Court's decision does not require consideration of TECO's sur-reply, the Court will DENY TECO's motion for leave to file a sur-reply, Dkt. 29, as moot.

*see also* 28 U.S.C. § 1608; *Mobil Cerro Negro, Ltd.*, 863 F.3d at 107–08 (surveying different approaches to enforcement).

Even when conducting plenary proceedings, moreover, it is not clear what legal standards should apply. Although the Second Circuit has offered a roadmap of appropriate steps—such as "fil[ing] a complaint in district court, detailing the terms of the award, establishing proper venue, . . . [and] furnishing a certified copy of the award," and then filing "a motion for judgment on the pleadings" or "a motion for summary judgment," *Mobil Cerro Negro, Ltd.*, 863 F.3d at 117–18—it remains unsettled whether, and to what extent, a petition to enforce an ICSID award should be treated like a traditional civil complaint.

The Court need not resolve these issues here, however, because Guatemala has "waive[d] any objections to the sufficiency of service of the Petition," Dkt. 21 at 2, and the parties agree that the first step is for the Court to consider whether TECO's petition states a plausible claim on its face, *see*, *e.g.*, Dkt. 20 at 2. At least for purposes of resolving Guatemala's threshold motion to dismiss, the Court will therefore "accept as true" the factual allegations contained in TECO's petition, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and will assess whether those allegations are sufficient, as a matter of law, to state an entitlement to entry of judgment enforcing the ICSID award.

**B.      Guatemala's Motion to Dismiss**

Guatemala's principal argument is straightforward. It explains that "[a]n ICSID award comprises two district parts: the reasoning" and "the enforceable decision," and it maintains that only the "decision"— or *dispositif*—has any legally enforceable effect. Dkt. 23-1 at 17. Thus, according to Guatemala, when "determining the legal sufficiency of the Petition, the Court must consider whether the *dispositif* of the [a]nnulment Committee purports to support the claim for

10

relief pled by Petitioner." Dkt. 27 at 10. From this perspective, Guatemala argues, TECO's claims fail as a matter of law because the Committee's decision "expressly annulled the award of damages and the award of interest" in "the [o]riginal [a]ward's *dispositif*." Dkt. 23-1 at 8. In other words, because the Committee annulled the Tribunal's award of damages and interest, "it left nothing from the [o]riginal [a]ward to enforce." *Id.* Guatemala's argument is based on two premises—*first*, that a court may not look beyond the *dispositif* to determine the meaning and effect of an arbitral award, and, *second*, that the ICSID Committee's *dispositif* annulled the entirety of the Tribunal's award to TECO. Neither premise withstands scrutiny.

*First*, Guatemala argues that the Court may look only to the *dispositif*—that is, the final paragraph—of the Committee's decision because, like "a memorandum opinion and order issued in the domestic context, a party may challenge the sufficiency of the former but it enforces only the latter." Dkt. 23-1 at 17. To be sure, a *dispositif*, like a court order, is the portion of the decision that has affirmative legal effect. That does not mean, however, that a *dispositif*—or a court order—must be construed in a vacuum, without reference to the reasoning that led to the operative conclusion. Guatemala cites no authority in support of its contention that the *dispositif* must be construed in the dark, nor is the Court aware of any authority supporting that proposition. In practice, moreover, it is not unusual for courts to look to the reasoning contained in an arbitral award to clarify or to understand the ultimate disposition. *See Duke Energy Int'l Peru Inv. No. 1 Ltd. v. Republic of Peru*, 892 F. Supp. 2d 53, 54, 57–58 (D.D.C. 2012); *see also, e.g.*, *Cleveland Paper Handlers & Sheet Straighteners Union No. 11 of Int'l Printing & Graphic Commc'ns Union v. E. W. Scripps Co.*, 681 F.2d 457, 460 (6th Cir. 1982) ("If the arbitrator's opinion and award, read together, are not ambiguous the award should be enforced.").

But, even if Guatemala were correct—and it is not—that the *dispositif* must stand alone, its argument would fail because the *dispositif* contained in the Committee's decision unambiguously supports TECO's position. Guatemala posits that the Committee's *dispositif* annulled the Tribunal's "*dispositif* . . . in all relevant respects." Dkt. 23-1 at 17. It asserts: "Specifically, the only part of the *dispositif* which supports [TECO's] request for judgment of '$21,100,552 plus interest'" is found in "subparagraphs C and D," and the Committee's *dispositif* "expressly addressed both C and D of the [Tribunal's] Award and *expressly* annuls both." *Id*. That, however, is not what the Committee's *dispositif* says. It does not annul all of subparagraphs C and D but, rather, annuls only the portions of those subparagraphs that failed to grant TECO the additional relief that it sought. Thus, subparagraph (1) of the Committee's *dispositif* annuls the Tribunal's "decision on damages for the loss of value claim"—that is, the Tribunal's rejection of TECO's claim for $222,484,783 in "loss of value" in its investment in EEGSA—"as reflected in paragraphs C and D of the *dispositif* of the" Tribunal. Dkt. 1-3 at 120 (Annul. Award ¶ 382(1)). Had the Committee intended to annul the Tribunal's award to TECO of the $22,100,552 on the company's separate "historical loss" claim, it would have annulled the entirety of subparagraphs C and D, as Guatemala incorrectly posits that it did. The fact that it, instead, annulled only the Tribunal's "decision on damages for the *loss of value claim*, as reflected in" those paragraphs is dispositive. *Id.* (emphasis added). The operative paragraph of the Committee's decision does just what TECO contends it did; it annulled the Tribunal's decision declining to include in the amount that "Guatemala shall pay," Dkt. 1-2 at 153 (Arb. Award ¶ 780(C)), the additional damages that TECO sought for its "loss of value claim," Dkt. 1-3 at 120 (Annul. Award ¶ 382(1)). Similarly, when the Committee annulled the Tribunal's "decision on damages for the loss of value claim, as reflected in paragraph[] . . . G of the

12

*dispositif*," *id.*, it annulled the Tribunal's decision "reject[ing]" "all other claims and pleas for relief," Dkt. 1-2 at 153 (Arb. Award ¶ 780(G)), to the extent the Tribunal did not award TECO relief on its "loss of value claim."

The same is true with respect to subparagraph 382(2) of the Committee's decision. That subparagraph did not annul the Tribunal's award of relief to TECO on its "historical loss" claim but, rather, annulled the Tribunal's decision only to the extent it failed to award "interest" on that claim "for the period 1 August 2009 until 21 October 2010, as reflected in paragraphs D and G of the *dispositif* of the" Tribunal." Dkt. 1-3 at 120 (Annul. Award ¶ 382(2)). Paragraph D of the Tribunal's *dispositif* awarded TECO interest on the amount awarded in paragraph C "at the US Prime rate plus a 2 percent premium . . . from October 21, 2010 until the date of full payment." Dkt. 1-2 at 153 (Arb. Award ¶ 780(D)). It was only to the extent that paragraph D did not award damages for the addition period from "1 August 2009 until 21 October 2010" that the Committee's *dispositif* annulled that decision; in all other respects, the Committee denied relief. Dkt. 1-3 at 120-21 (Annul. Award ¶ 382(2), (4)–(5), (11)).

Accordingly, applying the methodology that Guatemala urges—which looks only at the words of the *dispositifs*—its argument fails. Read together, the Tribunal and Committee *dispositifs* (1) award TECO $21,100,552 in "historical loss" damages, along with interest at the U.S. prime interest rate plus two percent, from October 21, 2010 to the date of payment, and (2) permit TECO to return to a new arbitral tribunal to pursue its additional claims for $222,484,783 in "loss of value" damages and to pursue its claim for additional interest on its "historical loss" claim for the period from August 1, 2009 to October 21, 2010. Because TECO asks only that this Court confirm the ICDIS award with respect to TECO's "historical loss" claim, interest on that claim from October 21, 2010 to the date of payment, and relevant administrative costs and

13

legal costs, Dkt. 1 at 10 (Prayer for Relief); *see also* Dkt. 1-3 at 120 (Annul. Award ¶ 382(8), (9)), Guatemala's contention that the relevant award is a nullity is unconvincing.

## CONCLUSION

For the reasons explained above, Respondent's motion to dismiss, Dkt. 23, is hereby **DENIED**.

**SO ORDERED**.

    /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 30, 2018