**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

TECO GUATEMALA HOLDINGS, LLC,

*Petitioner*,

v.

REPUBLIC OF GUATEMALA,

*Respondent*.

Civil Action No. 17-102 (RDM)

<u>**MEMORANDUM OPINION**</u>

Petitioner TECO Guatemala Holdings, LLC ("TECO") commenced this action by filing a

"Petition to Confirm an Arbitration Award" rendered by the International Centre for Settlement

of Investment Disputes ("ICSID") against the Republic of Guatemala ("Guatemala").  Dkt. 1.  In

response, Guatemala filed a motion to dismiss for failure to state a claim, Dkt. 23, which the

Court denied, Dkt. 34.  The case is now before the Court on TECO's motion for judgment on the

pleadings, or in the alternative, motion for summary judgment, Dkt. 36, and Guatemala's cross-

motion for summary judgment, for limited discovery, and for a stay, Dkt. 39.  For the reasons

explained below, the Court will **GRANT** TECO's motion for summary judgment and will

**DENY** Guatemala's cross-motion.

## I.  BACKGROUND

Because the relevant facts are set forth in detail in the Court's prior opinion, *TECO*

*Guatemala Holdings, LLC v. Republic of Guatemala*, No. 17-102 (RDM), 2018 WL 4705794, at

*1–4 (D.D.C. Sept. 30, 2018) ("*TECO I*"), the Court will only briefly summarize them here.

## A.     ICSID Convention Structure and Award Enforcement

The International Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention"), Mar. 18, 1965, 17 U.S.T. 1270, is a "multilateral treaty aimed at encouraging and facilitating private foreign investment in developing countries," *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017) (citing Anthony R. Parra, The History of ICSID 11–12, 24–26 (2012)), to which the United States is a signatory, *see* Convention on the Settlement of Investment Disputes Act of 1966, Pub. L. No. 89-532, 80 Stat. 334 (codified at 22 U.S.C. §§ 1650 and 1650a) (the treaty's implementing statute).  The ICSID Convention provides an international framework for adjudicating and enforcing investor-state disputes.  Under the Convention, any "Contracting State or any national of a Contracting State" may request that ICSID convene an arbitration tribunal.  *See* ICSID Convention art. 36(1).  The tribunal then considers the dispute and issues a written award, that "deal[s] with every question submitted to the [t]ribunal, and state[s] the reasons upon which it is based."  *Id*. art. 48(3).

The Convention also establishes procedures for parties to challenge or otherwise seek relief from an award entered by an ICSID tribunal.  Either party may request "revision of the reward" based on the "discovery of" a material fact that "was unknown to the [t]ribunal and to the applicant" at the time "the award was rendered," *see id*. art. 51(1), or an "annulment of the award" based on specified grounds, including "that the [t]ribunal .  .  .  manifestly exceeded is powers," "that there was corruption on the part of a member of the [t]ribunal," that the proceeding "serious[ly] depart[ed] from a fundamental rule of procedure," or "that the award .  .  .  failed to state the reasons on which it [was] based," *id*. art. 52(1).  When a party seeks annulment, ICSID convenes an *ad hoc* committee of three members, which is authorized "to

annul the award or any part thereof" on one or more of the specified grounds. *Id*. art. 52(3). The committee may, if appropriate, "stay enforcement of the award pending its decision and, at a party's request, enforcement of the award is "stayed provisionally until the [c]ommittee" renders its decision on that request. *Id*. art. 52(5). But, "[e]xcept to the extent that enforcement" has been stayed, the tribunal's award remains "binding on the parties and shall not be subject to any appeal or to any other remedy" other than those set forth in the ICSID Convention. *Id*. art. 53(1). Following an annulment, either partial or full, either party may request resubmission of the dispute to a new tribunal, *id.* art. 52(6)—although if an award had been annulled only in part, the new tribunal is prohibited from reconsidering any non-annulled portion of the award. Rule 55(3), ICSID Rules of Procedure for Arbitration Proceedings. The new tribunal may, if appropriate, "stay . . . the enforcement of the unannulled portion of the award until the date its own award is rendered," *id*. at Rule 55(3), but, as Guatemala acknowledges, in the absence of such a stay, "[p]artially annulled awards can be enforced," Dkt. 23-1 at 22.

ICSID is not empowered to enforce awards. Instead, prevailing parties must seek "recognition or enforcement" of their awards with a court of a member state. ICSID Convention art. 54. The courts of member states, however, play only a limited role. The Convention requires member-state courts to "recognize an award . . . as binding and [to] enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that [s]tate," or, for a member-state with "a federal constitution," to "treat the award as if it were a final judgment of the courts of a constituent state." *Id.* art. 54(1). Under the U.S. implementing statute, an ICSID award "shall create a right arising under a treaty of the United States," and, as required by the treaty, "[t]he pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final

judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

The statute further specifies that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which

permits courts to vacate FAA awards "procured by corruption, fraud, or undue means," *id.* at

§ 10, does "not apply to enforcement of [ICSID] awards." 22 U.S.C. § 1650a(a). As a result,

under both the ICSID Convention and the U.S. implementing legislation, a U.S. court is "not

permitted to examine an ICSID award's merits, its compliance with international law, or the

ICSID tribunal's jurisdiction to render the award;" all the court may do is "examine the

judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro Negro,*

*Ltd.*, 863 F.3d at 102.

## B.     Guatemala and TECO's Dispute

The ICSID arbitration at issue in this case involved a dispute between TECO, which is an

energy company incorporated in the United States, and the Republic of Guatemala. Dkt. 1 at 2

(Pet. ¶¶ 2–3). The dispute began with Guatemala's decision in 1997 to privatize Empresa

Eléctrica de Guatemala, S.A. ("EEGSA"), the largest electricity distribution company in the

country. *Id.* at 4 (Pet. ¶ 9). A consortium of energy companies, including a subsidiary

of TECO Energy, created an investment company that acquired a controlling interest in EEGSA

in July 1998. *Id.* (Pet. ¶ 10). The TECO Energy subsidiary held a substantial interest in the

consortium, and from 1998 until the sale of the consortium in 2010, the consortium maintained a

"controlling interest in EEGSA." *Id.* (Pet. ¶ 10). In 2005, the TECO Energy subsidiary's shares

in the consortium were transferred to TECO. *Id.* (Pet. ¶ 11).

The arbitration between TECO and Guatemala concerned the electricity rates paid to

EEGSA and other distribution companies. Among other components, the applicable rates

incorporated a Value Added for Distribution—or "VAD"—which was intended to compensate

the distributors for operating expenses and infrastructure and "to provide a fair return on investment." *Id.* (Pet. ¶ 12). The VAD was recalculated every five years by a Guatemalan regulatory agency, the National Electric Energy Commission ("CNEE"), which published the electricity rates for EEGSA and other electricity distributors in accordance with Guatemalan law. *Id.* According to TECO, the process by which CNEE set the VAD for the 2008–2013 period was unlawful in various respects and, as a result, violated Guatemala's obligation under the Dominican Republic-Central America Free Trade Agreement ("DR-CAFTA"), 43 I.L.M. 514 (2004), "to afford protected investments fair and equitable treatment." Dkt. 1 at 5 (Pet. ¶ 14). The United States is a party to the DR-CAFTA.

CNEE's actions resulted in "cash flow losses" for TECO and, according to TECO, ultimately led to the sale of the company "at a depreciated value" in 2010. *Id.* at 5 (Pet. ¶¶ 13–14). Pursuant to the DR-CAFTA, TECO filed a claim in arbitration against Guatemala in October 2010. *Id.* at 5–6 (Pet. ¶¶ 15–16). That arbitration was governed by the ICSID Convention. *Id.* at 5 (Pet. ¶ 15).

## C. Procedural History before the ICSID

In the arbitration, TECO sought damages in the amount of $243,585,335. *Id.* at 6 (Pet. ¶ 17). That total was the sum of two distinct claims for relief: *First*, TECO sought $21,100,552 to compensate it for the "portion of the cash flow . . . lost from August 1, 2008, when the [disputed rates] took effect, until October 21, 2010, when [TECO] sold its ownership interest in EEGSA." *Id.* (Pet. ¶ 17). TECO refers to this claim as its "historical loss" or "cash flow value" claim. *Second*, TECO sought $222,484,783 to compensate it for "the damages [it] suffered . . . as a result of the impaired value at which [TECO] sold its ownership interest." *Id.* at 7 (Pet. ¶ 17). TECO refers to this claim as its "loss of value" claim. *Id.* at 6–7 (Pet. ¶ 17). On

December 19, 2013, the ICSID arbitration tribunal found that Guatemala had violated the DR-CAFTA. *See id.* (Pet. ¶ 18); *see also* Dkt. 1-2 at 3 (Tribunal Award).

TECO's success on its damage claims, however, was mixed. The tribunal found that TECO had presented sufficient evidence to establish a "historical loss" of $21,100,552. Dkt. 1-2 at 146 (Tribunal Award ¶ 742). But the tribunal was not persuaded that TECO had offered evidence sufficient to prevail on its "loss of value" claim for $222,484,783. *Id*. at 146–47 (Tribunal Award ¶ 749). As to that claim, the tribunal found that there was not "sufficient evidence of the existence and quantum of the losses that were allegedly suffered as a consequence of the sale" of the consortium at a depreciated price. *Id*. On April 18, 2014, TECO filed an application with ICSID to annul the tribunal's award in part, and, that same day, Guatemala filed a petition seeking to annul the award in full. Dkt. 1 at 7 (Pet. ¶ 20). TECO sought to annul the award only to the extent that it denied the company's "loss of value" claim, denied its request for interest on its "historical losses" claim for the period from August 1, 2009 until October 21, 2010, and denied its "claimed interest rate applicable to pre-award interest." *Id*. (Pet. ¶ 20). Guatemala, on the other hand, sought to annul the Tribunal's award in its entirety. *Id.* (Pet. ¶ 20).

In response, ICSID convened an *ad hoc* committee to consider the annulment requests. Dkt. 1 at 7 (Pet. ¶ 21); *see also* Dkt. 1-3 (Annulment Decision). The committee rejected each of Guatemala's challenges to the tribunal's finding that it had violated the DR-CAFTA. *See* Dkt. 1-3 at 88–95 (Annulment Decision ¶¶ 274–300); *id*. at 98–103 (Annulment Decision ¶¶ 308–323); *id*. at 104–106 (Annulment Decision ¶¶ 327–331). In contrast, the committee was persuaded by TECO's contention that the tribunal's "decision on the [company's] loss of value claim [did] not meet the standards" required by the ICSID convention, *id*. at 42 (Annulment Decision ¶ 127),

6

because "the [t]ribunal's reasoning . . . [was] not clear at all," *id.* (Annulment Decision ¶ 128). It, accordingly, decided that the tribunal's decision on TECO's "loss of value claim . . . need[ed] to be annulled." *Id.* (Annulment Decision ¶ 127). The committee also concluded that the tribunal erred in declining to award TECO "interest on historical damages for the period before EEGSA's sale." *Id.* at 63 (Annulment Decision ¶ 198). Finally, the committee noted that the automatic stay of enforcement terminated as of the date of its decision. *Id.* at 120–21 (Annulment Decision ¶ 382).

**D.    Proceedings in this Court**

On January 16, 2017, TECO initiated this action, seeking to "confirm and recognize" the "Final Award" and the entry of judgment against Guatemala "in the amounts stated in the Award and the Annulment decision." Dkt. 1 at 9 (Pet. ¶ 27). TECO contends that it "is entitled to damages in the amount of . . . $21,100,552 [for its historical loss], plus interest on that amount at the US Prime rate plus two percent as from October 21, 2010 until the date of full payment, compounded annually." *Id.* (Pet. ¶ 28). TECO also seeks entry of judgment awarding it (1) "half of its costs of ICSID's administrative expenses and fees related to its application for partial annulment of the" tribunal Award, and (2) the costs that it incurred in contesting Guatemala's application for annulment, for a total amount of $416,048.12. *Id.* (Pet. ¶ 29).

On November 8, 2017, Guatemala moved to dismiss TECO's petition, arguing that the ICSID annulled the tribunal Award and that, as a result, there was no award for this Court to confirm. Dkt. 23. On September 30, 2018, the Court concluded that the committee's Annulment Decision (1) granted TECO $21,100,552 in "historical loss" damages, along with interest at the U.S. prime interest rate plus two percent, from October 21, 2010 to the date of payment, and "relevant administrative costs and legal costs," and (2) "permit[ed] TECO to return to a new

7

arbitral tribunal to pursue its additional claims for $222,484,783 in 'loss of value' damages and to pursue its claim for additional interest on its 'historical loss' claim for the period from August 1, 2009 to October 21, 2010." *TECO I*, 2018 WL 4705794, at *6. The Court, therefore, denied Guatemala's motion to dismiss. *Id.*

On October 29, 2018, TECO filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Dkt. 36. Guatemala opposed TECO's motions and cross-moved for summary judgment or, in the alternative, asked that the Court authorize it to either take "limited discovery" or stay this proceeding until the renewed arbitration proceeding is completed. Dkt. 39.

## II. ANALYSIS

Much of the disagreement between the parties centers on the proper role of the Court in enforcing an ICSID award. In TECO's view, the role of the Court is limited to examining the authenticity of the award and to enforcing the obligations it imposes—the Court may not consider the merits of the award. *See* Dkt. 36-1 at 16. Guatemala, in contrast, argues that the ICSID Convention and the U.S. implementing legislation require a district court to treat an ICSID award as a "final judgment" under domestic law, and thus a respondent, like Guatemala, is entitled to raise any defense available under Federal Rule of Civil Procedure 60 or any similar rule. Dkt. 40 at 16. On this theory, Guatemala argues that TECO's petition fails for three reasons. It first argues that, under the "complete arbitration rule," even the unannulled portion of the Tribunal Award should not be treated as a "final judgment"—rather, it resolves only a portion of the parties' dispute and, by analogy to 28 U.S.C. § 1291, is not yet "final." Dkt. 40 at 20. Second, it argues that "the doctrines of claim and issue preclusion prevent this Court from enforcing the judgment," *id.* at 10—that is, because "a claim by a sister shareholder" asserted

under a different treaty was dismissed by a separate ICSID tribunal, TECO should be from precluded from enforcing what Guatemala contends is an inconsistent arbitral award. *Id.* at 25. Third, Guatemala claims that the unannulled portion of the Tribunal Award is unenforceable because the underlying arbitration was tainted by TECO's fraudulent conduct. *Id.* at 33. The Court will analyze Guatemala's defenses in reverse order.

## A.     Scope of Review

Before addressing the substance of Guatemala's defenses, the Court must first decide the appropriate scope of review. The ICSID Convention, as with other forms of arbitration, facilitates dispute resolution through a process entered into by mutually consenting parties. *See* ICSID Convention, Preamble. Under that voluntary framework, the parties have agreed that the arbitral "award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in th[e] Convention." ICSID Convention art. 53(1). Those remedies are clearly defined: If a dispute arises about the "meaning or scope of an award, either party may request interpretation of the award" by submitting a request to the Secretary-General of ICSID, who must then refer the request to original tribunal or, if not possible, to a new tribunal. *Id.* art. 50. If a party discovers a decisive fact after the award is issued, and if the failure to discover that fact early was "not due to negligence," the "party may request revision of the award" by the original tribunal or, if not possible, by a new tribunal. *Id.* art. 51. And, if the tribunal was not properly constituted, manifestly exceeded its powers, was infected with corruption, or failed to state the reasons for its award, or if there was a serious departure from a fundamental rule or procedure, either party may seek annulment of the award by an ad hoc committee. *Id.* art. 52.

All of these remedies, however, are internal to the ICSID process. The role of the courts of the member-states, in contrast, is limited to the "recognition or enforcement" of an award. *Id.* art. 54. This is no accident. The Convention's aim is to streamline the enforcement of authenticated ICSID arbitral awards, and thus, under the Convention's terms, member-states' courts are generally not "permitted to examine an ICSID award's merits." *Mobil Cerro Negro*, 863 F.3d at 102. Rather, an enforcing court must generally "do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Id.* Consistent with the Convention's terms, Congress enacted implementing legislation that requires federal district courts to accord an ICSID award "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). In doing so, moreover, Congress expressly precluded courts from engaging in the more robust— although still "extremely limited," *Teamsters Local Union No. 61 v. United Parcel Service, Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (quoting *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C. Cir. 1991))—form of judicial review applicable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 *et seq.* Thus, where the FAA authorizes district courts to vacate arbitral awards "procured by corruption, fraud, or undue means" or awards rendered in excess of the arbitrator's powers, *id.* § 10, the ICSID implementing legislation does not, 22 U.S.C. § 1650a(a); *see also Mobil Cerro Negro*, 863 F.3d at 121 (citing 9 U.S.C. § 10). By placing ICSID awards beyond the scope of the FAA, Congress rendered these grounds of attack "unavailable to ICSID award-debtors in federal court enforcement proceedings." *Mobil Cerro Negro*, 863 F.3d at 120–21 (citing 112 Cong. Rec. 13148, 13149 (daily ed. June 15, 1966)).

Although the Court's role in enforcing an ICSID arbitral award is therefore exceptionally limited, the Court is more than a "rubber stamp." The Court must ensure that it

has subject-matter and personal jurisdiction, *Mobil Cerro Negro*, 863 F.3d at 112; *see also Micula v. Gov't of Rom.*, 104 F. Supp. 3d 42, 50–51 (D.D.C. 2015) (concluding that Congress deliberately chose not to allow a summary process to domesticate an ICSID arbitration award), must ensure that the award is authentic, *see Mobil Cerro Negro*, 863 F.3d at 121; and must ensure that its enforcement order is consistent with the award. Moreover, as Congress provided, the Court must apply the same standard that applies when federal courts are asked to give "full faith and credit" to a "final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a). As a result, in enforcing an ICSID award, district courts must "look to established procedures for enforcing state court judgments in federal court." *Mobil Cerro Negro*, 863 F.3d at 122. That process—recognized in Article IV of the U.S. Constitution, U.S. Const., Art. IV, Sec. 1—is governed by 28 U.S.C. § 1738, which requires federal courts to accord "authenticated" judgments from "every court within the United States" the "same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken." This means that a federal court must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so," *Allen v. McCurry*, 449 U.S. 90, 96 (1980), and, by extension, means that federal courts must accord ICSID awards the same binding effect required under the Convention.

Thus, the appropriate course of action for a district court petitioned to enforce an authenticated ICSID award is to treat it in the same manner as a state court judgment. It is in that manner that the Court's analysis will proceed. As discussed below, this requires something more than summary enforcement. But, at the same time, as the analysis below demonstrates, allowing Guatemala to raise the same defenses that a party could raise to a federal court's enforcement of a state court judgment does little to further its defense.

**B.     Fraud Defense**

According to Guatemala, "[b]oth Rule 60(b) and the Full Faith and Credit Clause provides that fraud is a defense to final judgments" and, by extension, to ICSID awards.  Dkt. 40 at 33.  The Court is unpersuaded that Rule 60(b) has any application in the present context and unpersuaded that Guatemala has made a prima facie showing of the type of fraud that would be necessary to decline to give full faith and credit to a foreign judgment.

Guatemala predicates its Rule 60(b) argument on a misunderstanding of the ICSID Convention and the U.S. implementing legislation.  According to Guatemala, ICSID requires the courts of member-states to treat an ICSID award "as if it were a final judgment of a court of that State," in other words, as a federal court judgment, and because final decisions of federal courts are subject to Rule 60(b), Guatemala contends that ICSID awards must be subject to the same— or at least a similar—safety valve.  *See* Dkt. 40 at 9.  Guatemala ignores, however, the very next sentence of the ICSID Convention, which provides that "[a] [c]onstracting [s]tate with a federal constitution," like the United States, "may enforce" ICSID awards "in or through its federal courts" in the same manner it "treat[s] . . . final judgment[s] of the courts of [its] constituent state[s]."  ICSID Convention art. 54(1).  That is precisely what Congress did when it enacted the ICSID implementing statute.  The statute—which controls this Court's consideration of TECO's petition—requires federal district courts to enforce ICSID awards in the same manner that final judgments of state courts are accorded full faith and credit by federal courts.  22 U.S.C. § 1650a(a).  On the rare occasion when federal courts enforce state court judgments, moreover, *see Mobil Cerro Negro*, 863 F.3d at 122 ("[a]ctions to enforce state court judgments in federal court are rare"), they do not apply Rule 60 but, rather, apply 28 U.S.C. § 1738.  The Court's analysis, therefore, is guided by § 1738, not Rule 60(b).

In arguing that Rule 60(b) applies, Guatemala cites *On Track Transp., Inc. v. Lakeside Warehouse & Trucking Inc.*, 245 F.R.D. 213, 216 (E.D. Pa. 2007), for the proposition that "Rule 60 defenses are allowed in an action to domesticate a judgment from a state court." Dkt. 40 at 33. That, however, is not what *On Track Transp. Inc.* held. Rather, that case dealt with a decision by the federal district court for the Eastern District of Pennsylvania whether to enforce a default judgment entered by the federal district court for the Central District of California but registered in the Eastern District of Pennsylvania. *See On Track Transp., Inc.*, 245 F.R.D. at 214. If Guatemala has any support for the novel proposition that Rule 60(b) provides an avenue for federal courts to set aside state court judgments, Dkt. 40 at 33, it has failed to cite to that authority.

Guatemala is on firmer ground—although only slightly firmer—in arguing that federal courts should decline to enforce a state court judgment pursuant to 28 U.S.C. § 1738 if the judgment was the product of fraud. Although the law addressing this question is sparse, both the relevant statutes and the case law point in the same direction: a federal court should decline to give full faith and credit to a state court judgment only if the state court would *itself* decline to enforce the judgment on grounds of fraud. Indeed, the ICSID implementing legislation expressly incorporates the standard applicable to state court judgments under 28 U.S.C. § 1738, *see* 22 U.S.C. § 1650a(a), which provides that state court judgments must be given the same full faith and credit as they "have by law or usage in the courts of such State," 28 U.S.C. § 1738. By extension, therefore, if the state court—or, here, the ICSID—would treat the judgment—or, here, the award—as binding, so must the federal district court. *See In re Genesys Data Techs., Inc.*, 204 F.3d 124 (4th Cir. 2000) (holding that under § 1738 a federal court must apply "the rules chosen by the State from which the judgment is taken").

*Harris Tr. & Sav. Bank v. Ellis*, 810 F.2d 700 (7th Cir. 1987), is instructive of this approach. In that case, the plaintiff sought to avoid the preclusive effect of a state court judgment in federal court by arguing that "the defendants committed fraud on the court," but the court was not persuaded. *Id.* at 705. As the Seventh Circuit stressed, under § 1738 federal courts must honor state court judgments to the same extent as any court of the relevant state. *See id.* at 703. But, under the law of the state at issue in that case, only the "*rendering* court" was permitted to "set aside a judgment based on fraud." *Id.* That state rule mirrored the federal rule which requires an "aggrieved party" to "return to the rendering court"—and "not simply crank up a new suit." *Id.* at 706. Applying those principles here, the relevant question is whether the ICSID Convention would permit the Court to decline to enforce the award at issue here. It would not.

The ICSID is clear: an ICSID "award shall be binding on the parties and shall not be subject to any appeal or *to any other remedy except those provided for in* [*the ICSID Convention*]." ICSID Convention art. 53(1). Nothing in the ICSID Convention permits a member-state's courts to vacate an award. Rather, a party's remedy lies with internal ICSID mechanisms. The ICSID Convention provides, for example, a mechanism for raising arguments based on newly discovered evidence. Thus, if Guatemala has, in fact, obtained new evidence that was not previously available to it, and if that new evidence is "of such a nature as decisively to affect the award," its remedy lies in Article 51 of the Convention, which, if satisfied, would permit resubmission of the dispute to the tribunal. ICSID Convention art. 51. It may not, however, present new evidence to this Court in lieu of following the ICSID procedures.

Guatemala nonetheless insists that this Court should refuse to enforce the award because TECO allegedly engaged in fraud. This argument is merely an effort to relitigate the

arbitration's underlying merits masquerading as an appeal to equity. The Court declines the invitation to do so.

Guatemala's attempt to revisit issues decided by the ICSID tribunal and *ad hoc* committee is at odds with the purpose of the treaty and the clear terms of the implementing legislation, both of which are designed to create a streamlined process for enforcing arbitral awards. Moreover, as explained above, the implementing legislation forecloses reliance on the FAA, which permits federal district courts to consider whether the award at issue was "procured by corruption, fraud, or undue means." 9 U.S.C. § 10. It is far from clear that Guatemala could satisfy even the FAA standard here; it is clear, however, that its efforts to revisit matters already litigated by the ICSID must be rejected. As explained in a statement offered by Senator Fulbright when he introduced the ICSID implementing legislation:

> The Federal Arbitration Act permits the courts to vacate an arbitration award on grounds of corruption, fraud, partiality, misconduct, or other prejudicial conduct of an arbitrator, or where the arbitrators exceed their power. Under Article 52 of the Convention such challenges to an award may be raised only through the annulment proceedings provide for in the Convention. To permit those issues to be examined by the courts at the enforcement stage would be contrary to the provisions of the Convention.

112 Cong. Rec. 13,148, 13, 149 (June 15, 1966).

To be sure, numerous courts have stated, with little explanation, that under § 1738 federal courts may refuse to enforce state judgments "procured" by "extrinsic fraud." *See, e.g.*, *Reliance Ins. Co. v. Calderon*, 685 F. Supp. 72, 75 (S.D.N.Y. 1988). Sensing a possible opening, Guatemala asserts that TECO committed "extrinsic fraud." Its allegations, however, do not support that contention. Although the concept of "extrinsic fraud" admits of some ambiguity, the relevant concept is that the fraud must be of the kind that calls into question the integrity of the adjudicative process itself. *See Quick v. EduCap., Inc.*, 318 F. Supp. 3d 121, 135 (D.D.C. 2018)

(explaining that "extrinsic" fraud occurs only where the party was prevented from presenting his claim in the underlying proceeding). The allegations of fraud advanced by Guatemala are not of this kind. Guatemala merely argues that TECO engaged in fraud because it urged the tribunal to rely on a recommendation regarding a new tariff rate that was offered to Guatemalan rate-setting authorities by a commission TECO asserted was independent—even though TECO indirectly appointed a member of the commission, which it had previously retained as a consultant, and then engaged in ex parte communications with that member in order to influence it and the other two members of the commission in their work. Dkt. 40 at 33–35.

At best, Guatemala's allegations raise reasons to doubt the merits of the decision rendered by the ICSID tribunal and *ad hoc* committee. They fall far short of "extrinsic fraud," however. There is no evidence, for instance, that any member of the arbitration panel or *ad hoc* committee was corrupt or that the integrity of the ICSID process was itself subject to question. Rather, as TECO explains, *see* Dkt. 41 at 33–36, Guatemala's allegations of "fraud" do not differ in kind from the type of arguments that were made—or could have been made—before the tribunal. To permit a party opposing enforcement of an ICSID award to challenge the enforcement of the award on the ground that certain evidence or arguments should have been disregarded would open the door to the type of re-litigation of the merits that the ICSID Convention and the U.S. implementing legislation sought to close. *See generally Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944) (noting that courts have been cautious to exercise their equitable power to set aside judgments absent circumstances "where enforcement of the judgment is 'manifestly unconscionable'"). The Court is neither inclined nor permitted to do so.

Finally, the Court is unpersuaded that discovery is warranted in the present circumstances. Guatemala merely asserts that it should be permitted discovery to learn "the full extent of the wrongdoing by [TECO] and others with respect to the [c]omission appointed to make a recommendation with the tariffs." Dkt. 40 at 38. Guatemala's counsel attests that discovery is needed to determine, for instance, "the extent to which . . . [TECO] . . . engaged in fraud or other wrongdoing by conducting an *ex parte* campaign with the person with whom [TECO] argues was to be responsible for setting the tariff." Dkt. 40-3 at 4 (Baldwin Decl. ¶17). To the extent that evidence would merely support Guatemala's contention that a person associated with TECO served on the tariff recommendation commission and as a witness in the proceeding, that evidence would not change the Court's conclusion. And, to the extent that Guatemala seeks discovery regarding other alleged wrongdoing by TECO, that request is too speculative to open the door to discovery in a proceeding that, by design, is as limited in scope as an ICSID enforcement action.

## C.      Issue and Claim Preclusion

The Court also rejects Guatemala's contention that the doctrines of issue and claim preclusion deprived the ICSID tribunal and *ad hoc* committee of jurisdiction to enter the award at issue. Guatemala is correct that, under 28 U.S.C. § 1738, a federal court should not give full faith and credit to a state court judgment if that state court lacked subject-matter or personal jurisdiction. *See Am. Steel Bldg. Co. v. Davidson & Richardson Const. Co.*, 847 F.2d 1519, 1521 (11th Cir. 1988) (internal quotation omitted); *Weininger v. Castro*, 462 F. Supp. 2d 457, 471 (S.D.N.Y. 2006). The rule, moreover, presumably applies under 22 U.S.C. § 1650a, which requires district courts to apply the full faith and credit standard to the enforcement of ICSID awards. There are, however, two problems with Guatemala's argument.

First, Guatemala argues that the tribunal and *ad hoc* committee in this matter were without jurisdiction because a tribunal in another matter—the *Iberdrola* dispute—concluded that it lacked jurisdiction over a similar dispute, and that determination should have had preclusive effect in this matter. *See* Dkt. 40 at 25–33. But, as the tribunal in this matter concluded, the *Iberdrola* dispute involved a different treaty—the Guatemala-Spain bilateral investment treaty—and the relevant standard under that treaty differed in material respects from the standard under the DR-CAFTA, which governed in this case. Dkt. 1-2 at 57 (Tribunal Award ¶ 253). The *ad hoc* committee, moreover, agreed that "the parties, the underlying treaties, the legal arguments, and the evidence in the two cases were different." Dkt. 1-3 at 76 (Annulment Decision ¶ 237).

Second, Guatemala's view of issue and claim preclusion stands those doctrines—which are designed to foster finality—on their heads. Although the parties did address the *Iberdrola* award before the tribunal, Guatemala did not argue that the *Iberdrola* award had preclusive effect. In the words of the tribunal: Guatemala "has in several occasions relied on the award made on 17 August 2012 by the Iberdrola arbitral tribunal. [Guatemala] did not however submit that the Iberdrola decision would have res judicata effects in the present case, or that it would be binding or have the value of a precedent." Dkt. 1-2 at 102 (Tribunal Award ¶ 485). The *ad hoc* committee, moreover, considered Guatemala's jurisdictional argument and considered the Iberdrola award. It concluded that "there is no doctrine of *stare decisis* under international law" and that, in any event, the parties, treaties, arguments, and evidence differed in the two matters. Dkt. 1-3 at 76 (Annulment Decision ¶ 237). Having had the opportunity to argue to the tribunal that it was bound by the decision in the *Iberdrola* dispute—yet failing to do so—and having been unsuccessful in convincing the *ad hoc* committee that the tribunal erred in failing "to follow the Iberdrola tribunal's decision," *id.,* Guatemala may not "reopen th[ose] question[s] in a collateral

attack upon an adverse judgment." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, n.9 (1982); *see also Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014) (discussing the *Insurance Corp. of Ireland* rule).

Lastly, Guatemala (again) argues that it should be entitled to discovery—ostensibly to ascertain the extent to which TECO acted in concert with Iberdrola in connection with Iberdrola's claims. *See* Dkt. 40 at 38. No such discovery is warranted. An action to enforce ICSID award is no place to request, for the first time, discovery on the tribunal's jurisdiction where the party had an opportunity to do so below. *See Mobil Cerro Negro*, 863 F.3d at 117 (noting that district courts enforcing ICSID awards are precluded from inquiring into the merits of the underlying controversy). Rather, Guatemala could—and should—have raised the jurisdictional challenge, and any related discovery requests, to the ICSID *ad hoc* committee. It did not. This enforcement proceeding is not an opportunity to relitigate the issue.

### D.    Finality

The only remaining defense that Guatemala raises is that TECO's enforcement petition is premature because the underlying arbitration is not yet final. Dkt. 40 at 18. The basis for this claim, says Guatemala, is that "there is an ongoing" arbitration between the "same parties," involving the "exact same claims," and even the same "case number." *Id.* In response, TECO observes that the underlying arbitration involved two distinct claims: (1) the "historical loss" claim, and (2) the "loss of value" claim. TECO argues that the "historical loss" claim became "final, binding, and ripe for enforcement" when the *ad hoc* committee rendered a decision on the parties' respective annulment requests. Dkt. 41 at 16. TECO, moreover, urges that Guatemala's "finality" defense is merely a reformulation of a different argument it advanced—and that this Court rejected—at the motion to dismiss stage. At that stage, Guatemala argued that the *ad hoc*

committee had annulled the entirety of TECO's claim, and, therefore, TECO had no basis for

seeking enforcement of the award.  The Court was unpersuaded and held:

> Read together, the [t]ribunal and [c]ommittee *dispositifs* (1) award TECO
> $21,100, 552 in "historic loss" damages, along with interest at the U.S. prime
> interest rate plus two percent, from October 21, 2010 to the date of payment, and
> (2) permit TECO to return to a new arbitral tribunal to pursue its additional
> claims from for $222,484,783 in "loss of value" damages and to pursue its claim
> for additional interest on its "historical loss" claim for the period from August
> 1, 2009 to October 21, 2010.

*TECO I*, 2018 WL 4705794, at *6.  In short, the Court has already held that the proceeding

involves two distinct claims—one that is final and enforceable, and one that is subject to further

arbitral proceedings.

Guatemala nevertheless argues that, under the "complete arbitration rule," TECO is not

entitled to seek enforcement of its "historical loss" award until proceedings regarding its "loss of

value" claim are also complete.  Under the "complete arbitration rule," a federal court should

refrain from reviewing or enforcing an arbitrator's decision until "the arbitrator has decided all

facets of the dispute."  *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 815

F.3d 154, 160 (4th Cir. 2016) (citation omitted).  The rule "ensures that courts will not become

incessantly dragooned into deciding narrow questions that form only a small part of a wider

dispute otherwise entrusted to arbitration," *id.*, and it instructs that, "ordinarily, an arbitration

award must be final and binding before a district court may vacate or enforce it," *Am. Postal

Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 246 (D.D.C. 2006).  According to

Guatemala, the award that TECO seeks to enforce "is not complete" because "issues," such as

the "loss of value" claim, "are still being arbitrated."  Dkt. 40 at 20.  This claim fails on both the

facts and law.

As to the facts, Guatemala's claim ignores the fact that the *ad hoc* committee treated the dispute as involving two distinct claims—the claim for "historical loss," post October 21, 2010 interest, and the specified administrative costs and lawyers' fees, and the claim for "loss of value" and interest from August 2009 until October 21, 2010. *See TECO I*, 2018 WL 4705794 at *6; Dkt. 1-3 at 120 (Annulment Decision ¶ 382(8), (9)). Where, as here, an award has "only been annulled in part, the new [t]ribunal" may "not reconsider any portion of the award not so annulled," and, the tribunal may—but need not—"stay the enforcement of the unannulled portion of the award." Rule 55, ICSID Rules of Procedure for Arbitration Proceedings. In other words, under the ICSID rules, the unannulled portion of an award is immediately enforceable in the absence of a stay, and that portion of the award is not subject to revision or further consideration by the new tribunal.

On the law, a "[t]ribunal's *subjective* beliefs about the finality of its award" is a "key factor in determining whether [an] award was, in fact, final." *Berkowitz v. Republic of Costa Rica*, 288 F. Supp. 3d 166, 174 (D.D.C. 2018). Here, the *ad hoc* committee expressly treated the unannulled portion of the award as immediately enforceable. Indeed, as explained above, the *ad hoc* committee treated the two claims as discrete, and it entered a final disposition with respect to the "historical loss" claim. And there is no ambiguity as to the finality the *ad hoc* committee gave the award. To be sure, the *ad hoc* committee did not resolve TECO's "loss of value" claim and instead concluded that TECO could pursue that claim in a "*new arbitral*" proceeding. Even so, the unannulled portion of the award is immediately enforceable. First, and foremost, that conclusion is what the ICSID Convention, ICSID rules, and the relevant arbitral decisions contemplate. The ICSID rules, moreover, provide that the unannulled portion of an award will be immediately enforceable absent a stay. And, neither the new tribunal nor any other entity

operating under the authority of ICSID stayed enforcement of the unanulled portion of the award.

Despite already conceding that partially annulled awards are enforceable, and despite the fact that the treaty expressly contemplates that the award at issue here became immediately enforceable absent a stay to the contrary, Guatemala urges that it is still too early to enforce the award. On Guatemala's view, enforcement is unwarranted because there is some risk that the new tribunal will issue orders or render a decision that is at odds with the unanulled portion of the award or that counsels against the immediate enforcement of the award. That contention, however, is difficult to reconcile with the ICSID rules, which preclude the new tribunal from reconsidering any portion of the unanulled award, and, more importantly, if such a risk existed, Guatemala is free to seek a stay from the new tribunal, which would be best situated to consider such an argument. Absent a stay, however, the Court can only conclude that the *ad hoc* committee's disposition of TECO's "historic loss" claim "finally and conclusively dispose[d] of a separate and independent claim," even though it did not resolve "all the claims that were submitted to arbitration." *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986).

Guatemala's reliance on the *kompetenz-kompetenz* principle is equally unavailing. That principle recognizes that arbitrators generally have the power to decide their own jurisdiction. *See China Minmentals Materials Imp. and Exp. Co., v Chi Mei Corp.*, 334 F.3d 274, 287 (3d Cir. 2003). Based on this notion, Guatemala suggests that the new tribunal might tread into territory covered by the award that TECO seeks to enforce here. But that contention assumes, without basis, that the new tribunal will ignore the ICSID rule precluding it from doing just that, *see* ICSID Arbitration Rules, Rule 55(3), and it is based on unadorned speculation. And, even if the

new tribunal were to do so, TECO would—no doubt—seek to annul any such action on the ground that the tribunal's decision constituted "a serious departure from a fundamental rule of procedure." ICSID Convention art. 51(1)(d).

**E.    Request for a Stay**

Finally, the Court also rejects Guatemala's request to "stay the current proceeding until the Tribunal in the ongoing arbitration has issued its award and that award becomes final under the ICSID Rules." Dkt. 40 at 40. As just explained, the award currently before the Court *has* become final and there is no reason to delay its enforcement. Guatemala again seeks to analogize to Federal Rules of Civil Procedure—here Rule 62—which have no bearing on the matter. Rather, under the ICSID, an award is made binding "except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of [the ICSID]." ICSID, art. 53. If Guatemala believed that a stay was warranted pending a decision by the new tribunal, it should have applied to that tribunal for a stay, as the ICSID rules contemplate. Absent such a stay, Guatemala must "abide by and comply with the terms of the award." *Id.* The Court has considered and found unpersuasive Guatemala's arguments for delaying this obligation further.

*    *    *

In sum, none of Guatemala's defenses withstand scrutiny, the award is final, and, thus, Guatemala is "obliged to abide by and comply with the award." ICSID Convention art. 54. The Court will, accordingly, enforce the award

**CONCLUSION**

For the reasons explained above, the Court will **GRANT** Petitioner's motion for summary judgment, Dkt. 36, and will **DENY** Respondent's cross-motion for summary judgment, Dkt. 40, for leave to take discovery, and for stay of proceedings.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  October 1, 2019